# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | No. 1:20-mj-02430-MBB-2 and |
| | No. 1:20-mj-02431-MBB-1 |
| **KENJI DRAYTON,** | |
| Defendant. | |

## DEFENDANT'S OPPOSITION TO THE
## GOVERNMENT'S MOTION FOR DETENTION

The defendant, Kenji Drayton ("Drayton"), by and through undersigned counsel, respectfully moves this Honorable Court to allow Drayton's release pending adjudication of the criminal charges against him, pursuant to 18 U.S.C. § 3142(a)(2). As grounds therefor, Drayton avers and states he is not a flight risk and there are conditions of release that will ensure the "the safety of any other person and the community," as required by 18 U.S.C. § 3142(f). Specifically, Drayton suggests that imposition of the following specific conditions of release satisfy the bail statute:

- He is subject to GPS monitoring.

- He resides with his fiancée[1], their three-month-old daughter, and Angela's mother, Wanda Kallon, at 202 Winthrop St., Brockton, MA 02302.

- He continues to work for Laborer's Local 175.

- He abides by a curfew requiring him to be inside his residence between 8:00PM and 6:00AM every day.

- He surrenders his passport to U.S. Pre-Trial Services.

---

[1] Angela Kallon

- His travel be limited to the District of Massachusetts.

- He signs a $50,000 unsecured appearance bond: and

- That a warrant for his arrest be issued and held in abeyance pending full compliance with each of the foregoing conditions as well as any additional conditions imposed by this Court.

## APPLICABLE LAW

Drayton has been named in two (2) separate complaints, *see U.S. v. Michael Drayton et al.*, 1:20-mj-02430-MBB-2 (hereinafter, "Case 1") and *U.S v. Kenji Drayton et al.*, 1:20-mj-02431-MBB-1 (hereinafter, "Case 2"), each of which allege that he engaged in a conspiracy to violate the Controlled Substances Act, in violation of 21 U.S.C. § 846. Neither complaint alleges a specific quantity. However, because the defendant has been charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(e)(3)(A) creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."

"[T]he presumption serves to shift the burden of production and to require that the defendant introduce '*some* evidence' to the contrary." *United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990) (emphasis added). Moreover, while it appears to apply, the presumption in no way alters the clear and convincing evidence standard by which the government must establish that Drayton does, in fact, present a risk of danger to the community, regardless of the presumption. *See United States v. Patriarca*, 948 F.2d 789 (1st Cir. 1991). The statute is clear: "in determining whether there are conditions of release that will reasonably assure… the safety of any other person and the community," this Court "shall consider" the factors set forth in 18 U.S.C. § 3142(g)(1)-(4).

## ARGUMENT

I.  **Drayton's Background, Present Circumstances and Ties to the Community**

    a.  **Ties to the Community**

Drayton's background and present circumstances evidence he has developed significant ties exclusively within the Commonwealth. He is a forty (40) year old life-long resident of Massachusetts who was raised by his mother and father in a stable home alongside his brother and three (3) older sisters. His mother passed-away in 2016 but his father resides in Milton. All his siblings live in Massachusetts, as well. Following his graduation from Hyde Park High School in 1998, Drayton demonstrated both his devotion to his family as well as the premium value he places on family ties by agreeing to serve as his middle sister, Shaunette's, home health aide for several years after she developed a disability which prevented her from working at the MBTA (where both Drayton's parents and his two (2) other sisters were also employed).

Drayton is the father of four (4) children, three of whom are adults (between the ages of 18 and 25) and one of whom, Sarai, is a mere three (3) months old. All four of his children also reside within the Commonwealth. He is the primary financial provider for Sarai and her mother, Angela, contributing his wages as a union Laborer towards their support and care. Undersigned counsel has spoken directly with the Business Manager at Local 125 who confirmed that he is aware of Drayton's arrest, that Drayton nonetheless remains " a Member in Good Standing with the Local", and that Drayton may immediately return to/resume his union job should he be released on conditions by this Honorable Court.[2] While all of the foregoing amply demonstrates Drayton's significant ties to his local community, there is no evidence establishing he has any significant, or

---

[2] Because Drayton is the primary breadwinner for Sarai, he respectfully requests that his continued employment with Laborer's Local 175 be made an express condition of his release.

even remote, ties outside the Commonwealth (indeed, now evidence even of travel outside the Commonwealth), all of which substantially undermines any claim that he is a risk of flight.

### b. Drayton's Criminal Record

Drayton's criminal record, which may at first blush give this Court pause before ordering his release, further supports a finding that he will abide by any and all conditions imposed as well as that he is of little (or no) risk to flee. Specifically, on December 11, 2001, three (3) years after he graduated from High School, Drayton was indicted for one (1) count of murder in the first degree, in violation of G.L. c. 265 § 1. *See Commonwealth v. Kenji Drayton*, 0184CR11083. It appears from the docket, *see* Docket Sheet, attached hereto as Exhibit A, that he was held for four (4) years pending a jury trial which commenced on March 24, 2005 and concluded with a guilty finding after more than one (1) full day of deliberations on April 6, 2005. He was sentenced to a term of imprisonment for life which he served primarily at MCI-Shirley where he was held for approximately twelve (12) years without any record of institutional violence or major infractions noted by the Massachusetts Department of Corrections.[3]

In December, 2006, while the defendant's direct appeal was still pending, Drayton "filed his first motion for a new trial based on newly discovered evidence," which was largely premised on an affidavit obtained by a percipient witness (who subsequently passed away) to the circumstances surrounding the alleged homicide. After nearly a decade of litigation, the Supreme Judicial Court affirmed the trial court's denial of Drayton's motion for new trial but "remand[ed] the case for an evidentiary hearing on the defendant's motion for a new trial to determine whether" the affidavit might be admissible pursuant to a "a narrow, constitutionally based exception to the

---

[3] While housed at Shirley, he was permitted to work jobs in the 3d floor corridor and gym, which are privileges only assigned to persons with no known gang affiliations.

hearsay rule." *Commonwealth v. Drayton*, 479 Mass. 479, 480 (2018), citing *Commonwealth v. Drayton*, 473 Mass. 23 (2015). After nearly two (2) additional years of litigation on remand, the trial court granted Drayton's motion for new trial which the Commonwealth appealed.

He was released in July 2017 on a GPS bracelet pending new/retrial and placed under the supervision of Suffolk County Adult Probation. Notwithstanding that Drayton had filed a meritorious motion for new trial over a decade before it was allowed, notwithstanding that Drayton had served over 15 years on a conviction the SJC later concluded the justice of which had been seriously "undermined," notwithstanding that Drayton's release after these 15+ years of litigation which established his original conviction was not consonant with justice had been authorized by the SJC after it was initially blocked by the trial court, notwithstanding that he was again facing a potential mandatory term of imprisonment ( life) *substantially more serious than the one he faces in either complaint at issue here,* Drayton neither fled, nor disabled or attempted to remove his electronic bracelet,  nor did he violate his conditions of release for the approximately one year and three months period before this matter was finally resolved by a time-served sentence on a plea to the lesser included offense of manslaughter[4]. Moreover, the conditions of release he complied with for approximately one and one-quarter years were nearly as stringent as if he had remained incarcerated: not only was he subject to GPS monitoring, but also to house arrest with permission to leave only between 9:30AM and 11:00AM during which he was required to remain within a restricted zone. *See* Exhibit A. His record of compliance with, and despite all the foregoing,  amply

---

[4] According to his Board of Probation (BOP) record, his matter was resolved in October 2018. The charges alleging threats and intimidation, made by a woman whom he married while in prison after his release, were both dismissed. According to Drayton, this was because her claim that he was headed to New Bedford where she resided was shown to be false/impossible based on his GPS and home confinement conditions. The fact his BOP clearly reflects dismissal of both charges but also that his release/probation was neither violated nor terminated confirms Drayton's recall.

demonstrates not only that Drayton can and will comply with this Court's orders but that he is hardly a risk to flee[5] and/or a danger to the community as he complies with the same.

### c. Medical Condition

Finally, Drayton personal characteristics places him within a category of persons with the highest risk for complication, or even death, as a possible result of contracting COVID-19. Drayton is a forty (40) year old African American Male with a history of acute asthma which is treated by a four-times daily levalbuterol inhaler. *See* Medical Records, attached hereto as Exhibit B. Moreover, although he is not presently treated for diabetes, he is at risk to become diabetic in light of his history of high blood pressure,[6] his BMI of 45.4,[7] and his family medical history.[8] Those with acute asthma, high blood pressure, and diabetes, as well as African-Americans have been indicated by the Centers for Disease Control and Prevention as being at-risk for complications once infected with COVID-19.[9] These concerns cannot be understated particularly in light of the fact that an a forty (40) year old African American male who "did not appear" to have any "underlying conditions that would put him at risk" died just this past Thursday at the Norfolk

---

[5] It is also noteworthy that, despite a BOP that includes entries going back some 26 yrs., there is not a single default warrant or warrant for failing to appear in its entirety. In short, Drayton's record clearly establishes he "appears as required".

[6] For example, during medical intake, his blood pressure was measured at 142 over 94 (in contrast to a normal reading of 120 over 80) and his resting heart rate was 79 beats per minute.

[7] Drayton stands 6 feet tall and weighs 335 pounds; height/weight metrics ascribe him to "obesity", yet another high-risk category.

[8] His mother died in 2016 of heart-related complications and his father is prediabetic, while his aunts and uncles have been diagnosed with diabetes.

[9] *See People of Any Age With Underlying Medical Conditions*, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

County jail as a result of complications from COVID-19. This individual arrived at the facility asymptomatic and initially tested negative. Nine (9) to ten (10) days later, he began to show symptoms, and was hospitalized for a month before he died of the disease. At this point in time, it is well-known in the community the extent and ease with which COVID-19 is capable of being transmitted to persons within, and throughout, a facility.[10] The foregoing drastically tips the balance in favor of Drayton's pretrial release on the stringent conditions proposed herein.

## II. Nature of the Offense

The affidavit in support of the criminal complaint underlying Case 2 falls far short of its claim that Drayton is the head of a Boston-based drug trafficking organization ("DTO"). Rather, the conversations set forth in the one hundred seventeen (117) page affidavit, even when the mine run of its allegations and interpretations of coded language are assumed as true, suggest, if proven, he may have been—at best—a mid- or street-level redistributor with ties to a loose affiliation of local dealers. Moreover, virtually all of the conversations therein, by their own description, involve 62-125 gram transactions. In short, the kind of multi-kilogram transaction for which the Bail Reform Act was designed and which might merit detention in an altogether different case is entirely absent here.

Moreover, there is not one scintilla of evidence that Drayton had been physically violent that he threatened such violence, or that he ordered the same to be committed by anyone he was allegedly involved with. Although there are references to firearms, the affidavit does not establish

---

[10] The Donald W. Wyatt ("Wyatt") detention facility illustrates just how difficult it is to manage the spread of the virus once inside. For example, it went from zero positive cases as of April 20, 2020, to nine (9) positive cases as of April 30, 2020, to forty-eight (48) positive tests as of June 1, 2020, to fifty-seven (57) positive tests as of July 2, 2020. *See* Status Reports from *In Re: Donald W. Wyatt Detention Center*, 20-mc-00004-JJM, available at https://www.rid.uscourts.gov/re-donald-w-wyatt-detention-center-20-mc-00004-jjm.

Drayton ever physically possessed them. Indeed, other individuals, not Drayton, were charged relative thereto.

## CONCLUSION

Based on the foregoing, Drayton respectfully opposes the government's motion for detention and respectfully submits the conditions of release proposed herein are amply sufficient to ensure his appearance before this Court as well as "the safety of any other person and the community," as required by 18 U.S.C. § 3142(f).

Dated: July 5, 2020

Respectfully submitted,
KENJI DRAYTON
By and through his attorney,

*/s/ R. Bradford Bailey*
R. Bradford Bailey, BBO#549749
BRAD BAILEY LAW, P.C.
44 School Street, Suite 1000B
Boston, Massachusetts 02108
Tel.:   (857) 991-1945
Fax:   (857) 265-3184
brad@bradbaileylaw.com

### Certificate of Service

I, R. Bradford Bailey, hereby certify that on this the 5th day of July, 2020, I caused a true copy of the foregoing motion to be served upon all necessary parties to this matter by virtue of electronically filing the same via the CM/ECF system.

*/s/ R. Bradford Bailey*
R. Bradford Bailey